CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| CRYSTAL ALSTON<br>10006 Cedarhollow Lane<br>Largo, Maryland 20774<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFO. SRVCS. LLC<br>Serve: CSC-Lawyers Incorp. Srvc. Co.<br>7 Saint Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>    Defendant,<br><br>EXPERIAN INFO. SOLS. INC.<br>Serve: The Corporation Trust Inc.<br>2405 York Road, Suite 201<br>Lutherville Timonium, MD 21093<br><br>    Defendant,<br><br>TRANS UNION, LLC<br>Serve: CSC-Lawyers Incorp. Srvc. Co.<br>7 Saint Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>    Defendant. | Case No.  CAL21-06960 |

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Crystal Alston, brings this complaint against the defendants Equifax Information Services, LLC ("EQU"), Experian Information Solutions, Inc. ("EXP") and Trans Union, LLC ("TU"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA").

1

## PARTIES TO ACTION

2. Plaintiff is a natural person that resides in the state of Maryland.

3. Defendants are credit reporting agencies ("CRA") as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

4. In or about January 2020, Plaintiff discovered several inaccurately reported debts on her credit reports with the CRAs.

5. The inaccuracies on her credit reports included numerous Nelnet Servicing student loan accounts, one Toyota Motor Credit Corp auto loan and two collections for a Comcast account.

6. On March 5, 2020, Plaintiff sent dispute letters to the CRAs.

7. In her dispute letters, the Plaintiff disputed the Toyota Motor Credit Corp account because it did include a Date of First Delinquency, she disputed the Waypoint Resource Group collection because the debt amount was inflated by more than 100%, and she disputed the Nelnet Servicing accounts because the accounts were in forbearance instead of delinquent.

8. Plaintiff received investigation results from TU only.

9. TU removed the Waypoint collection but updated and/or verified the Nelnet and Toyota accounts without making the corrections to those accounts.

10. Based upon Toyota's representations to Plaintiff, it did not receive notice of Plaintiff's dispute from any of the Defendants.

11. TU did not do its own investigation. Instead, it relied exclusively on Toyota's response to Plaintiff's dispute and parroted that response in subsequent credit reports that were issued to third parties.

12. EQU did not process Plaintiff's dispute. Instead, it sent Plaintiff a letter stating that she did not a credit file.

2

13. EQU's reason for not processing Plaintiff's dispute was false for Plaintiff had a credit file with EQU at the time of her dispute.

14. EXP also did not conduct an investigation. Upon information and belief, EXP did not forward notice of Plaintiff's dispute to the furnishers of the disputed information.

15. On June 24, 2020, Plaintiff sent another round of letters to the Defendants.

16. In her letter to TU, Plaintiff requested a description of the investigation that TU conducted in response to Plaintiff's dispute from March 2020.

17. In her letter to EXP, Plaintiff complained that she did not receive dispute results for her dispute from March 2020, and she requested a description of the investigation—if it was performed—along with a copy of the dispute results.

18. As for her letter to EQU, she complained that EQU failed to process her dispute for a bogus reason and requested her dispute be investigated.

19. Neither EXP nor TU provided a description of their investigations. Instead, they sent results of a purported reinvestigation.

20. EXP and TU's purported reinvestigation did not correct any errors. Both EXP and TU failed to make appropriate correction or modifications to the disputed account. results.

21. Equifax did not provide any response to Plaintiff's letter dated June 2, 2020.

22. Based upon Toyota's representations to Plaintiff, it only received a notice of dispute from Defendant Trans Union.

23. On September 21, 2020, Plaintiff sent a third round of letters to the Defendants.

24. In her letter, Plaintiff disputed the Toyota debt as inaccurate and incomplete on the basis that the date of first delinquency was not being reported.

25. Plaintiff's letter also disputed the Nelnet debt as inaccurate and incomplete because

   (i) Nelnet did not report Plaintiff asked for a forbearance before the accounts went delinquent; and

   (ii) Even if the accounts were delinquent, the delinquency started in April 2019, but several accounts show as delinquent in March 2019.

26. Additionally, Plaintiff's letter disputed a collection account for a Comcast bill that was being reported by a debt collector named Southwest Credit System. She disputed the Southwest Credit System collection because the debt amount was inflated by more than 100%.

27. EXP issued dispute results dated October 10, 2020 that stated the disputed information had been updated.

28. EXP did not make any corrections or modifications to the disputed information.

29. EXP failed to may corrections because it did not conduct a reasonable investigation.

30. EQU and TU did not send results of an investigation to Plaintiff.

31. Upon information and belief, EQU and TU did not send results of an investigation because they did not forward notice of Plaintiff's dispute to the furnishers and did not conduct their own reinvestigation of Plaintiff's dispute.

32. On March 17, 2021, Plaintiff sent more dispute letters to the Defendants.

33. EXP issued dispute results dated April 10, 2021 that stated the disputed information had been updated.

34. Upon information and belief, EXP did not state the disputed information had been verified as accurate because EXP did not forward notice of Plaintiff's dispute to Nelnet, or EXP did forward notice of the dispute but did not receive a response.

35. Experian did not review and consider Plaintiff's dispute as part of investigation that it conducted.

36. Experian did not modify or delete the information after it failed to investigate the disputed information and verify its accuracy or completeness.

37. Both TU and EQU did not respond to Plaintiff's dispute from March 2021.

## COUNT ONE: VIOLATION OF 15 U.S.C. § 1681e(b)

38. Plaintiff incorporates paragraphs 1 through 37.

39. Defendants sold credit reports to their subscribers and other third parties that contained inaccurate information that Plaintiff disputed.

40. The Defendants prepared credit reports with the inaccurate information because they lack reasonable procedures to assure the information is reported with maximum accuracy.

41. Defendants' failure to use reasonable procedures to assure maximum information on the credit reports they prepared was a violation of 15 U.S.C. § 1681e(b).

42. As a result of Defendants' violations, Plaintiff suffered actual damages, including but not limited to: pecuniary expenses, loss of credit opportunity, damages to reputation, frustration, embarrassment, humiliation and other mental and emotional distress.

43. The violations by Defendants were willful, rendering them liable for statutory, actual and punitive damages as allowed under 15 U.S.C. § 1681n. In the alternative, the Defendants were merely negligent, and only liable for actual damages as prescribed in 15 U.S.C. § 1681o.

## COUNT TWO: VIOLATION OF 15 U.S.C. § 1681i(a)

44. Plaintiff incorporates paragraphs 1 through 43.

45. Section 1681i(a)(1) mandates that a CRA investigate a consumer's dispute and report the results of the reinvestigation.

46. Section 1681i(a)(2)(A) mandates that a CRA provide notice of the consumer's dispute to the furnisher of the disputed information.

47. Section 1681i(a)(4)(A) relates to § 1681i(a)(1) and mandates that the CRA review and consider all the relevant information provided by the consumer during the CRAs' investigation.

48. Section 1681i(a)(5)(A) mandates that a CRA delete or modify the disputed information that has been found to be inaccurate or incomplete or unverifiable.

49. The CRAs have virtually no policies, practices or procedures to investigate a consumer's dispute, much less review and consider the relevant information provided by the consumer as a part of their reinvestigation.

50. Although the CRAs are required to *both* investigate the consumer dispute pursuant to section 1681i(a)(1) and forward notice of the dispute to the furnisher pursuant to section 1681i(a)(2), the policies, practices and procedures of the CRAs are designed to only comply with § 1681i(a)(2).

51. Despite the plain language of section 1681i(a)(1)'s language to conduct a reinvestigation, the CRAs have enacted policies, practices and procedures that rely on the furnisher's response to a consumer's dispute instead of the CRAs conducting their own reinvestigation.

52. Making matters worse, the CRAs do not require that the furnishers perform a reasonable investigation of the consumer's dispute. In fact, the CRAs are fully aware that the furnishers regularly perform superficial reviews *instead* of reasonable investigations. Like the CRAs, the furnishers do not consider and review the consumer's dispute when responding to a consumer dispute. The only information a furnisher considers when receiving a notice of dispute from a CRA is the ACDV. Despite knowing the furnisher's do not consider the consumer's dispute, the CRAs rely on the furnisher's response as satisfaction of their obligation to *investigate* the dispute under § 1681i(a)(1).

6

53. Upon information and belief, the CRAs are not even in full compliance with section 1681i(a)(2) because the CRAs fail to forward *all* relevant information and/or fail to provide the information within the time periods required under the statute. The furnisher's response is substantially hampered by CRAs failure to provide all information and to provide the information timely to the furnishers.

54. Further, the CRAs will—more times than not—misstate or mischaracterize a consumer's dispute when the CRAs transcribe a dispute onto an ACDV. The CRAs failure to accurately convey the dispute violates section 1681i(a)(2) because such failures leave out relevant information for the furnishers.

55. Because the defendant CRAs almost *never* conduct an investigation to determine whether the disputed information is accurate, complete or verifiable, the Defendants *never* obtain evidence to establish or confirm the accuracy or completeness of the disputed information as required by sections 1681i(a)(1)(A) and 1681i(a)(5)(A).

56. Defendants violated 15 U.S.C. §§ 1681i(a)(2) by failing to provide the furnishers—Nelnet, Toyota, Waypoint and Southwest—with notice of Plaintiff's disputes.

57. Defendants violated 15 U.S.C. §§ 1681i(a)(1), 1681i(a)(4) and 1681i(a)(5) by failing to properly investigate Plaintiff's disputes and modify the disputed information.

58. As a result of the Defendants' violations of 15 U.S.C. §§ 1681i(a)(1)-(5), Plaintiff suffered actual damages, including but not limited to: out-of-pocket and/or pecuniary costs, loss of credit opportunity, damage to reputation, frustration, embarrassment, humiliation and other mental and emotional distress.

59. The violations by the Defendants were willful, rendering each of them individually liable for statutory and punitive damages, actual damages, costs and attorney's fees pursuant to 15

U.S.C. § 1681n. In the alternative, the CRAs were negligent, which entitles Plaintiff to recover actual damages, statutory damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681o.

## DEMAND FOR TRIAL BY JURY

60. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays:

A. That the Court award actual damages for Counts I & II;

B. That the Court award maximum statutory damages for Counts I and II;

C. That the Court award maximum punitive damages for Count II;

D. That the Court award costs and any reasonable attorneys' fees; and

E. That the Court award any such other and further legal and equitable relief as may be found appropriate and as the Court may deem equitable and just.

Respectfully submitted,

CRYSTAL ALSTON

Crystal Alston (Pro Se Plaintiff)
10006 Cedarhollow Ln
Largo, MD 20774
Tel: (240) 463-2448

*Pro Se Plaintiff*